THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DANA BROWN, B-45793, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:24-cv-000304-GCS |
| | ) |
| SALLY MILLAR and | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Dana Brown, an inmate of the Illinois Department of Corrections ("IDOC"), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Centralia Correctional Center ("Centralia"). (Doc. 1). Specifically, Plaintiff alleges that Defendant Sally Millar administered an insulin dose that was too high, and Wexford's failure to adequately staff the prison caused or worsened the harm he suffered. The Complaint is now before the Court for preliminary review under 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint due to his consent to the full jurisdiction of a magistrate judge (Doc. 5) and the limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the IDOC, Wexford, and this Court.

is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff is dependent on insulin, which he receives by injection three times a day. (Doc. 1, p. 7). His doses are administered via a "KwikPen," an insulin dispenser that allows dosages to be adjusted up or down by the twist of a knob. The dosage selected is displayed in a window. Plaintiff alleges that the KwikPen has a bright yellow warning label that indicates the contents cannot be transferred to a different syringe or a severe overdose may occur. An overdose can cause very low blood sugar and can jeopardize a patient's life. Plaintiff alleges that Eli Lilly makes a specific needle to be used with the Kwik Pen because the use of a generic syringe can result in an overdose of up to five times.

Plaintiff alleges that on November 16, 2021, at 3:45 am, Defendant Sally Millar was the nurse assigned to distribute medications in his living area. (Doc. 1, p. 8). Millar told Plaintiff that she had forgotten the needle for his quick pen. Plaintiff said that he would wait for Millar to get the correct needle from the healthcare unit, but Millar informed him that she had already used another syringe to draw his dose. At this time, Plaintiff did not know that the KwikPen had a sticker that warned against using an alternative syringe. Millar assured Plaintiff that the dose was the same as his normal dose and that he would be fine, but she also told him not to tell anyone about the incident so that she would not get in trouble.

Within an hour of receiving the insulin, Plaintiff's condition quickly deteriorated, and he could tell his sugar level was low. He ate a whole box of cakes and four packets of ramen noodles that he had in his cell to no avail. He then fell asleep for the next ten hours. When he awoke, his entire body and his bedding were drenched in sweat. He was upset and distraught, as he realized he may have been given an overdose of insulin.

Around 4:00 pm a non-party nurse came to Plaintiff's cell. The nurse asked Plaintiff what was wrong with his KwikPen, and he told her what happened with Millar. The nurse asked if Plaintiff was okay and told him he was lucky to be alive because the insulin he receives is highly concentrated, and he was administered five times the dose he should have received. (Doc. 1, p. 9).

Plaintiff states that he is suing Millar in her individual capacity for acting with deliberate indifference when she knowingly ignored the warnings on his KwikPen and administered a dose that was five times higher than what was appropriate. He sues Wexford for "developing policies, procedures and practices of not providing adequate medical treatment, by not ensuring that a regularly assigned doctor is employed at Centralia." He further alleges that Wexford is at fault because there was no doctor on site to direct a response to his overdose, and he was not examined after the overdose. He also alleges Wexford has not ensured that the medical unit staff is properly trained.

Based on the allegations in the Complaint, the Court designates the following claims:

**Claim 1:**      **Eighth Amendment deliberate indifference claim against Defendant Millar for administering an unsafe dose of Plaintiff's KwikPen insulin;**

**Claim 2:** *Monell* **claim against Wexford for failing to adequately staff Centralia and/or for failing to adequately train staff.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## DISCUSSION

To state a claim for deliberate indifference to a serious medical need, an inmate must show that (1) he suffered from an objectively serious medical condition; and (2) the defendant was deliberately indifferent to a risk of serious harm from that condition. *See Rasho v. Elyea*, 856 F.3d 469, 475-476 (7th Cir. 2017). "Every claim by a prisoner that he has not received adequate medical treatment is not a violation of the Eighth Amendment." *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). To determine if a medical professional acted with deliberate indifference, courts look to the provider's subjective state of mind. *Id.* at 728. An inmate need not show that a doctor explicitly intended harm or believed it would occur, but he must show more than negligence, medical malpractice, or even objective recklessness. *Id.* Deliberate indifference is a culpability standard akin to criminal recklessness. *See Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021).

Generally, caselaw does not support a finding that a single dose of an incorrect medication is sufficient to state a claim for deliberate indifference. *See, e.g.*, *Merriweather*

*v. Ashley*, Cause No. 3:22-CV-727-DRL-MGG, 2023 WL 1100433, at *2 (N.D. Ind. Jan. 30, 2023) (collecting cases for the proposition that a one-time misadministration of medication does not support a finding of deliberate indifference); *Ehrenberg v. Wisconsin Dept. of Corrections*, No. 10-C-1022, 2010 WL 5089484, at *2 (E.D. Wisc. Dec. 7, 2010) (finding that an inmate did not state a sufficient claim where Plaintiff alleged he was given the wrong dose of medication on a single occasion). However, there are cases where inmates have been allowed to proceed on the theory that he received an overdose and suffered ill-effects. *See, e.g.*, *Mitchell v. Williams*, Case No. 19-cv-01236-JPG, 2022 WL 594877, at *4-5 (S.D. Ill. Feb. 28, 2022) (analyzing an inmate's claim against a prison nurse for giving him an overdose of antibiotics that caused physical ill-effects and finding at summary judgment that the inmate failed to establish the requisite level of deliberate indifference); *West v. Fuchs*, No. 01-2862, 38 Fed. Appx. 323, 326 (7th Cir. April 18, 2002) (analyzing an inmate's deliberate indifference claim that staff were deliberately indifferent for giving him an overdose of a seizure medication that caused ill-effects and concluding the court was correct to determine there was no deliberate indifference by the staff so the claim could not survive summary judgment). Here, Plaintiff alleges that Defendant Millar acted contrary to the medication directions boldly displayed on his KwikPen when she administered his dose the morning of November 16, 2021. She also asked him not to tell anyone about her actions so that she would not get in trouble, which suggests that she knew her actions were incorrect or risky. Plaintiff suffered immediate effects. At initial review, these allegations are sufficient to proceed against Defendant Millar.

Plaintiff also faults Defendant Wexford Health Sources, the prison's medical contractor, for understaffing and inadequate training of staff. However, Plaintiff does not explain how either of these alleged issues caused the harm that he suffered, *i.e.*, the overdose. Most importantly, he does not allege that Wexford knew about the situation that he faced, or that understaffing slowed down any potential response. In fact, Plaintiff does not allege that when he first noticed symptoms, he even tried to alert anyone or to ask for medical assistance. Instead, he laid down and went to sleep without alerting personnel. Eventually, Plaintiff saw another nurse about twelve hours after the overdose. He does not allege that he asked her for any specific sort of help or follow-up care and was denied. Instead, Plaintiff simply says that she asked if he was okay and does not suggest he told her otherwise. Thus, on the facts presented it is not apparent that Wexford's alleged understaffing caused him any harm.

Instead, it appears that the incident he suffered was the misdeed of a single employee, which is not sufficient to sustain a claim against Wexford. *See, e.g.*, *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 690 (1978) (noting that wrongful act of a single employee is not enough to impose § 1983 liability on a municipality). Plaintiff's failure to train allegations are too generic. He does not allege what sort of training was needed, who needed to be trained, or how the lack of training might have caused Millar's actions and led to his harm. *See, e.g.*, *Chatman v. Davis,* 839 F.3d 679, 686 (7th Cir. 2016) (finding that an inmate's failure to train claim about a nurse's failure to use the proper asthma attack protocol was insufficient because she did not show the lack of training posed a risk of substantial harm, Wexford knew about this risk, or the

nurse's lack of training caused his specific harm). Plaintiff also does not allege that the policy or practice extended beyond his own one-time experience, and generally single incidents are insufficient to support claims of this nature. *Id.* at 685. Thus, Claim 2 against Wexford is dismissed without prejudice for failure to state a claim.

### DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives initial screening as described above against Sally Millar. By contrast, **Claim 2** against Wexford Health Sources, Inc., is insufficient to state a claim, and the Clerk of Court is **DIRECTED** to **TERMINATE** Wexford.

The Clerk of Court is **DIRECTED** to prepare for Defendant Sally Millar: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation

of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. *See* FED. R. CIV. PROC. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

IT IS SO ORDERED.

DATED: November 18, 2024.

*Gilbert C. Sison*

Digitally signed by Judge Sison
Date: 2024.11.18
13:02:08 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed as a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.